IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Rosetta Briggs, | ) | C/A No.: 1:13-1666-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.     Relevant Background

A.     Procedural History

On September 22, 2010, Plaintiff filed an application for DIB in which she alleged her disability began on February 24, 2009.  Tr. at 116–117.  Her application was denied initially and upon reconsideration.  Tr. at 67–68 and 73.  On November 20, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Carol Guyton.  Tr. at 33–62.  The ALJ issued an unfavorable decision on December 12, 2012, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 21–27.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 25, 2013.  [Entry #1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was born on September 8, 1949, and she was 63 years old at the time of the hearing.  Tr. at 25, 37.  She completed the tenth grade.  Tr. at 39.  Her past relevant work ("PRW") was as a machine operator.  Tr. at 27.  She alleges she has been unable to work since February 24, 2009.  Tr. at 116.

2.     Medical History

On January 30, 2010, Plaintiff presented to the emergency department, complaining of chest pain.  Tr. at 180–84.  She stated that she took no medications and displayed a full range of motion in all extremities, with no muscle weakness.  Tr. at 182–

2

183.  Plaintiff was noted have abnormal blood pressure, and was discharged home with instructions to follow up with her physician for a nuclear stress test.  Tr. at 187.

On September 30, 2010, Plaintiff visited the East Aiken Health Center, complaining of pain and soreness in her lower legs.  Tr. at 197.  She reported a history of nerve damage to the third and fourth fingers of her left hand.  *Id.*  Menopausal syndrome and sciatica were assessed.  Tr. at 198.  By October 11, 2010, she reported that the leg pain was resolving.  Tr. at 196.  Menopausal syndrome and iron deficiency anemia were assessed.  *Id.*

On January 3, 2011, Plaintiff visited John A. Nicholson, M.D. for a consultative exam.  Tr. at 199–205. Plaintiff's complaints included the following:  history of crush injury to the left ring finger; "nerve problem" with left middle finger; right thumb pain with pressure;  bilateral leg pain, worse with standing and walking;  dizziness; hypertension; low iron;  and occasional chest pain.  Tr. at 199.  Dr. Nicholson indicated that review of the medical records also indicates diagnoses of menopausal symptoms, sciatica and iron deficiency anemia.  *Id.*  She was noted to be obese, mildly anxious and in no obvious distress.  Tr. at 200.  Her weight was 232 pounds.  Tr. at 202.  She was noted to be 5' 3" tall.  *Id.*  Her blood pressure was elevated at 158/72.  *Id.*  Her bilateral hands demonstrated full range of motion and no abnormalities.  Tr. at 200.  Minimal effusion was noted in her bilateral knees.  *Id.*  Tenderness was noted in her posterior knees and upper calves bilaterally, with no palpable mass.  *Id.*   Manual muscle testing revealed normal strength in upper and lower limbs.  *Id.*  Sensory testing was normal in all four limbs.  *Id.*  Reflex testing was low normal, diminished at 1+ and symmetrical.  *Id.*

Plaintiff's gait was noted to be narrow-based with normal stance and swing pattern. *Id.* She was alert and oriented in all spheres. *Id.* Dr. Nicholson assessed bilateral lower limb pain without specific objective findings; left hand dysfunction, unusual description with no specific objective findings; history of noncardiac chest pain, no clear etiology; and history of subjective dizziness. *Id.*

Plaintiff presented to the emergency department at University Hospital on May 20, 2011, complaining of abdominal pain. Tr. at 211. She was diagnosed with diverticulitis. Tr. at 212. Plaintiff underwent noncontrast CT of the abdomen and pelvis. Tr. at 207. The cecum was noted to be mildly prominent in distention, with questionable adjacent stranding and small nonspecific lymph nodes. *Id.* There was an apparent transition in the mid-ascending colon, and underlying stricture or neoplasm could not be excluded. *Id.* An indeterminant low-density lesion was noted on the right lobe of the liver. *Id.* A small umbilical hernia was also noted. *Id.*

X-ray of the abdomen was also performed on May 21, 2011. Tr. at 228. Degenerative change of the hips and spine were noted. *Id.*

Plaintiff next presented to the emergency department at University Hospital on May 26, 2011, with complaints of lightheadedness and irritability. Tr. at 213. Discharge diagnoses included diverticulitis and dizziness. Tr. at 218. Abdominal x-ray indicated lumbar spine changes including hypertrophic change to the dorsal spine, slight lumbar dextroscoliosis, and hypertrophic changes of the lower lumbar facet joints. Tr. at 230. CT of the abdomen and pelvis indicated prominent cecum, small sigmoid diverticula, and small cyst to the liver. Tr. at 257.

On May 27, 2011, Lindsey Crumlin, M.D. completed a residual functional capacity assessment. Tr. at 234–240. The primary diagnosis was indicated to be musculoskeletal, and the secondary diagnosis was varicose leg veins. Tr. at 234. Other alleged impairment was level II obesity. *Id.* Dr. Crumlin indicated that the claimant could occasionally lift and/or carry 50 pounds; that she could frequently lift and/or carry 25 pounds; that she could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; that she could sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; that her ability to push/pull was unlimited; that she had no postural limitations; that she had no manipulative limitations; that she had no visual limitations; that she had no communicative limitations; and that she had no environmental limitations. Tr. at 235–238. Dr. Crumlin further indicated the following: "Ms. Brigg's pain i[s] increased out [of] proportion with respect to her exam. She has leg varicosities but no musculoskeletal defects nor sensorimotor deficit." Tr. at 239.

Plaintiff presented to surgeon John D. Cheape, M.D. on June 9, 2011, regarding abdominal pain and possible diverticulitis. Tr. at 255. Dr. Cheape indicated that he would refer her for colonoscopy. *Id.*

Plaintiff underwent colonoscopy on July 11, 2012, which revealed a right colon mass. Tr. at 248–249. X-ray of the chest performed on that date revealed a five millimeter pulmonary nodule overlying the right lower lobe. Tr. at 247.

On July 12, 2011, Plaintiff underwent hand-assisted laparoscopic right colectomy to remove her right colon tumor. Tr. at 244–245. The surgical pathology report indicated

low-grade adenocarcinoma extending through the bowel wall into the pericecal fat (PT3), with clear margins, positive lymph nodes, and tumor deposits.  Tr. at 242.

On July 19, 2011, Dr. Cheape sent a letter to oncologist Michael Shlaer, M.D. in which he indicated that he was referring Plaintiff to Dr. Shlaer for adjuvant chemotherapy.  Tr. at 254.  He indicated that he had concern for spread of the tumor based on imaging reports that indicated a two centimeter lesion on the liver and a small coin lesion on pre-op chest x-ray.  *Id.*

Plaintiff followed up with Dr. Cheape on July 25, 2011, for drainage from her incision site.  Tr. at 253.  The incision was cleaned and opened, but it was determined not to be infected.  *Id.*

CT of the chest was performed on August 1, 2011, and indicated pericardial effusion, suspicion for subtle hepatic metastases, and degenerative spine.  Tr. at 251.

Plaintiff presented to oncologist Donald C. Townsend, M.D. on August 8, 2011. Tr. at 260–262.  She indicated that she had done well postoperatively and that she continued to improve with no significant limitations in her activity.  Tr. at 260.  She denied most problems, but did complain of arthritis pain.  *Id.*  Her weight was 199.8 pounds.  Tr. at 261.  Dr. Townsend indicated Plaintiff's performance status to be 1, meaning "no physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g., office work, light house work)."  *Id.*  Dr. Townsend indicated that Plaintiff had a moderately to well differentiated adenocarcinoma of the ascending colon with a 4.5 cm primary extending through the bowel wall into the pericolonic adipose tissue with 7 of 23 lymph nodes positive for metastatic disease and no evidence of spread

of the disease beyond except for the five millimeter nodule in the right lung, which remained unevaluated. *Id.* He indicated that Plaintiff's cancer was a stage IIIB (T3N2M0), but that it could also be stage IV if the lung nodule represented metastatic disease. *Id.* He indicated that the chemotherapy would be the appropriate course of action for treatment of stage III or stage IV metastatic disease. *Id.* Dr. Townsend recommended use of intravenous FOLFOX administered every two weeks for a total of thirteen doses. Tr. at 262. Plaintiff was referred for placement of a Port-a-cath, and it was indicated that she would begin chemotherapy in two to three weeks. *Id.*

On August 18, 2011, Plaintiff underwent right internal jugular vein smart port placement. Tr. at 263.

On September 13, 2011, Plaintiff reported to Dr. Townsend for follow up and administration of her second dose of FOLFOX. Tr. at 271–272. She reported arthritis, but denied pain, fevers, sweats, nausea, vomiting, diarrhea, and mouth sores. Tr. at 271. Dr. Townsend indicated that her performance status was 1, meaning, "no physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g. office work, light house work)." *Id.*

On September 19, 2011, Plaintiff presented to Dr. Cheape with non-healing surgical wound. Tr. at 287. She reported less drainage and some improvement since the last visit. *Id.* Dr. Cheape treated the wound with silver nitrate and instructed Plaintiff to follow up in two weeks. *Id.*

Plaintiff followed up with Dr. Shlaer on September 27, 2011. Tr. at 267–269. Plaintiff reported mild non-activity limiting fatigue; stable weight and no appetite

disturbance; no abdominal pain, nausea, vomiting, or other gastrointestinal complaints; no bone pain; no cough or dyspnea; and no headache. Tr. at 267.

Plaintiff followed up with Dr. Cheape regarding the surgical wound on October 7, 2011, and the wound was determined to be completely healed. Tr. at 288.

Plaintiff followed up with Dr. Townsend on October 25, 2011, after completing two months of FOLFOX. Tr. at 265. She reported no toxicities; no fever or chills; no sweats or nightsweats; no weight loss; good appetite; no neuropathy; and no diarrhea. *Id.* Her performance status was indicated to be 0, meaning "fully active, able to carry on all predisease activities without restrictions." *Id.*

Plaintiff followed up with Dr. Townsend on November 22, 2011, for administration of her seventh dose of FOLFOX. Tr. at 274–275. She reported experiencing approximately four days of fatigue following each prior dose of chemotherapy. Tr. at 274. She denied diarrhea and other symptoms. *Id.* Her performance status was indicated to be 1, meaning "no physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g., office work, light house work). Tr. at 275. She was noted to be responding well to treatment and had no evidence of recurrent disease. *Id.*

Rebecca Meriwether, M.D. completed a physical residual functional capacity assessment on November 29, 2011. Tr. at 276–283. She indicated a primary diagnosis of musculoskeletal and a secondary diagnosis of colon cancer. Tr. at 276. She indicated that Plaintiff could occasionally lift and/or carry 20 pounds; that she could frequently lift and/or carry 10 pounds; that she could stand and/or walk (with normal breaks) for a total

8

of about 6 hours in an 8-hour workday; that she could sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; that her abilities to push and/or pull were unlimited; that she could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; that she could never climb ladders, ropes, or scaffolds; that she had no manipulative limitations; that she had no visual limitations; that she had no communicative limitations; and that she had no environmental limitations. Tr. at 277–280. She indicated that Plaintiff's alleged musculoskeletal pain was partially supported by the evidence in the file, but that the alleged severity of symptoms and functional limitations was out of proportion to the objective evidence. Tr. at 281. She further indicated that Plaintiff had recent surgery and was undergoing chemotherapy for colon cancer; that her treating oncologist had concluded that she had stage IIIB disease with no distant metastases; and that the oncologist had indicated performance statuses ECOG 0 and 1, which were consistent with her rating which gave Plaintiff the benefit of the doubt and assumed that chemotherapy should be concluded within one year. *Id.*

Plaintiff followed up with Dr. Cheape on December 12, 2011, and he indicated that the surgical wound had remained healed. Tr. at 289.

On December 20, 2011, Plaintiff followed up with Dr. Townsend. Tr. at 304–306. Dr. Townsend indicated that Plaintiff had lost some stamina over the last treatment or two, but that she was tolerating the treatment well with no paresthesias or evidence of symptomatic peripheral neuropathy, nausea or vomiting. Tr. at 304. He indicated a performance status of 1, meaning "no physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g. office work, light house work)." Tr. at 304.

Plaintiff presented to the emergency department at Aiken Regional Medical Center on January 28, 2012, with complaint of elevated blood pressure. Tr. at 290–303. She also noted unstable gait earlier in the day, which had resolved. Tr. at 290. Her hemoglobin was low at 11.0. Tr. at 303. She was diagnosed with hypertension and dizziness. Tr. at 292.

Plaintiff followed up with Dr. Townsend on January 31, 2012, after delaying treatment with FOLFOX by one week. Tr. at 307–308. Treatment was delayed due to absolute neutrophil count of less than 1000. Tr. at 310. She was noted to be active in and out of the house with no significant limitations to her activities and chores. Tr. at 307. She denied pain and other symptoms. *Id.* Her performance status was 1, which means "no physically strenuous work activity, but ambulatory and able to carry out light or sedentary work (e.g. office work, light house work)." *Id.*

On February 14, 2012, Plaintiff followed up with Dr. Townsend for administration of her twelfth dose of chemotherapy. Tr. at 311–312. She complained of itching and swelling between the toes on her left foot. Tr. at 311. Her appetite and stamina were indicated to be stable, and she complained of no pain or other symptoms. *Id.* Dr. Townsend indicated a performance status of 1, meaning "no physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g. office work, light house work)." *Id.* She was prescribed Diflucan for Candida on the left foot. Tr. at 312. She was instructed to follow up in two weeks for administration of her final dose of FOLFOX. *Id.*

Plaintiff was scheduled to receive her final dose of FOLFOX on February 28, 2012, but treatment was delayed by one week because of a low absolute neutrophil count. Tr. at 352.  Her port was flushed and deaccessed.  *Id.*

Plaintiff received her final dose of FOLFOX on March 6, 2012.  Tr. at 354.

Plaintiff followed up with Dr. Cheape on March 15, 2012.  Tr. at 374.  She reported stable weight, good appetite, and regular bowel habits.  *Id.*

On May 1, 2012, Plaintiff presented to Dr. Townsend for follow up.  Tr. at 354–356.  She indicated that her energy was gradually improving, but that she had to work to complete a day's tasks.  Tr. at 354.  She indicated that residual fatigue from chemotherapy was still present, but she denied pain, gastrointestinal symptoms and pain. *Id.*  She did report numbness and pins and needles sensation in the fingertips and toes, but she indicated slight improvements since stopping treatment.  *Id.*  Upon physical examination, Dr. Townsend noted numbness in the fingertips from the last knuckle out and in the toes bilaterally.  Tr. at 355.  He indicated no other abnormalities.  *Id.*  Dr. Townsend indicated a performance status of 1, meaning "no physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g. office work, light house work)."  *Id.*  He  indicated that Plaintiff's energy and stamina were improving, but were still not back to normal, and that Plaintiff's hemoglobin was low. *Id.*

On April 18, 2012, Plaintiff presented to Marc Brickman, DO, FACP to establish primary medical care.  Tr. at 320–321.  Review of systems was positive for right leg pain and negative with respect to all other complaints.  Tr. at 320.  Dr. Brickman noted

11

Baker's cyst on the right and obesity.  *Id.*  Plaintiff was counseled on weight loss, instructed to increase exercise and referred for DEXA scan and mammogram.  Tr. at 321.  DEXA scan on April 25, 2012 indicated normal bone density.  Tr. at 333.  Mammogram also on April 25, 2012 indicated no mammographic evidence of malignancy.  Tr. at 332.

On April 27, 2012, Plaintiff underwent CT scans of the chest and abdomen.  Tr. at 342–343.  CT of the chest revealed no significant abnormality or significant interval change.  Tr. at 342.  CT of the abdomen indicated multiple small hepatic lesions, possibly due to cysts or metastatic disease and a new small lesion the left lobe of the liver, which was suspicious for metastatic lesion.  Tr. at 343.

Plaintiff presented to Angela Fallaw-Zaremba, D.P.M., on May 8, 2012 for a podiatric examination.  Tr. at 346–349.  Plaintiff's sensory reflexes were intact, and her muscle strength was 5/5.  Tr. at 347.  She had no discrepancy in limb length, but her gait was noted to be antalgic.  *Id.*  Dr. Fallaw-Zaremba indicated impression of tinea pedis of the left foot; hallux valgus of the left foot; and painful foot.  Tr. at 346.

Plaintiff followed up with Dr. Townsend on July 24, 2012.  Tr. at 357–358.  She noted that her energy and stamina were good, but that she was having to stay indoors because of intolerance for the heat.  Tr. at 357.  She complained of mild paresthesias in her hands and feet and mild fatigue.  *Id.*  Dr. Townsend indicated that Plaintiff continued to do well with no evidence of recurrent disease, and he assessed her performance status at 0, meaning, "fully active, able to carry on all predisease activities without restrictions."  Tr. at 358.

Plaintiff followed up with Dr. Cheape on September 27, 2012.  Tr. at 375–376. She denied weight loss, rectal bleeding, change in appetite, abdominal pain, fever, chills and irregular bowel habits.  Tr. at 375.  Review of systems was negative for all symptoms.  Tr. at 375–376.  Plaintiff was noted to be doing well, and she was instructed to follow up in six months.  Tr. at 376.

On October 16, 2012, Plaintiff followed up with Dr. Townsend.  Tr. at 379–380. Dr. Townsend indicated that she continued to slowly improve in terms of stamina and energy and that she was "quite active in and out of the house however despite mild fatigue." Tr. at 379.  He further indicated that Plaintiff had a gradual increase in stamina, but was still fairly tired.  *Id.*  He indicated a performance status of 0, meaning "fully active, able to carry on all predisease activities without restrictions." *Id.*  He indicated that she continued to do well without evidence of recurrent disease.  Tr. at 380.

On November 13, 2012, Plaintiff presented to Leroy Robinson, III, OD, for evaluation with respect to complaints of tearing, dryness, and burning in her eyes.  Tr. at 388–391.  Dr. Robinson diagnosed hyperopia of the bilateral eyes; astigmatism; presbyopia; and dry eye.  Tr. at 391.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on November 20, 2012, Plaintiff appeared with counsel, and testified that she became disabled on February 24, 2009.  Tr. at 37.  She stated that she was 5'2" tall, and that she weighed 218 pounds.  *Id.*  She testified that she lived with her

husband in a single family home.  Tr. at 38.  She indicated that she had a driver's license, and that she drove to the hearing.  Tr. at 39.  She testified that she completed the tenth grade.  *Id.*  She also indicated that she was laid off from her job on February 24, 2009; that she subsequently collected unemployment compensation; and that she looked for work while collecting unemployment benefits.  Tr. at 39–40.  Plaintiff testified that her past work included operating a machine that produced magnets for flywheels.  Tr. at 43.

Plaintiff indicated that she was having problems with her legs and with digesting food.  Tr. at 40.  She testified that she experienced a cramping pain in her legs, which worsened when she was tired after a couple of hours of moving around during the day. Tr. at 42–43.  She indicated that the cramping pain came and went, but that she experienced constant soreness in her legs.  Tr. at 43.  She testified that she experienced moderate fatigue.  Tr. at 50.  She indicated that she experienced numbness in her feet.  Tr. at 51.  She testified that she had cramps in her left ring finger, as well as some arthritis in a finger on her right hand.  Tr. at 51–52.  She testified that she experienced soreness at her incision site on her abdomen.  Tr. at 54.

Plaintiff testified that she had not participated in physical therapy or other treatment specifically for her leg pain.  Tr. at 42.  She also testified that she was not taking any medications other than vitamins.  Tr. at 41.

Plaintiff testified that she could sit for 20 to 30 minutes at a time; that she could stand for 20 to 30 minutes at a time; and that she could walk for about 30 minutes at a time.  Tr. at 45.  However, she indicated that she would have to sit on a bench to rest

when attempting to complete a lap on a half mile track.  Tr. at 45.  She testified that she could lift 20 to 30 pounds.  *Id.*

Plaintiff testified that she did some cooking; that she occasionally washed dishes; and that she folded clothes.  Tr. at 45–46.  She indicated that she did not vacuum, wash clothing, or shop for groceries.  Tr. at 45–46.  She indicated that she sometimes went with her husband to grocery shop, but that she sat while her husband waited in line.  Tr. at 46. She indicated that she would occasionally shop in the mall, but that she would pull right up to the door of the store that she was visiting.  Tr. at 47.  She testified that she regularly attended church, and she served as an aide to her pastor, helping him with small tasks from time to time.  Tr. at 47–48.

### b.     Vocational Expert Testimony

Vocational Expert ("VE") Mary L. Cornelius reviewed the record and testified at the hearing.  Tr. at 57–61.  The VE categorized Plaintiff's PRW as a machine operator, DOT number 619.685-062, medium and semi-skilled, SVP of 3.  Tr. at 58.  The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work, but should never climb ladders, ropes, or scaffolds.  Tr. at 58–59.  The VE testified that the hypothetical individual could perform the Plaintiff's PRW.  *Id.*  The ALJ then asked the VE as a second hypothetical question in which the hypothetical individual could stand for 30 minutes before taking a break; could stand for three to four hours during an eight-hour shift; and would have occasional postural limitations.  Tr. at 60. The VE indicated that the hypothetical individual would be unable to perform light or medium work with those restrictions.  Tr. at 60.

Plaintiff's counsel declined to question the VE.  Tr. at 60.

      2.     The ALJ's Findings

In her decision dated December 12, 2012, the ALJ made the following findings of

fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.
2. The claimant has not engaged in substantial gainful activity since February 24, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairments:  degenerative changes in the lower lumbar spine (20 CFR 404.1520 (c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c).
6. The claimant is capable of performing past relevant work as a machine operator.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
7. The claimant has not been under a disability, as defined in the Social Security Act, from February 24, 2009, through the date of this decision (20 CFR 404.1520(f)).

Tr. at 23–27.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    The ALJ failed to properly assess opinion evidence; and

2)    The ALJ did not consider all of the Plaintiff's impairments and improperly failed to consider medical evidence not contradicted by any evidence of record.

[Entry #12 at 14, 22].

The Commissioner counters that the ALJ reasonably weighed the opinion evidence; that the ALJ reasonably determined that Plaintiff's status post colon surgery and varicose veins were not severe impairments and that the ALJ considered the combined effect of Plaintiff's impairments.  [Entry #13 at 10, 13, 14].

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from engaging in substantial gainful employment.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982).  The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

---

impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[1] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is

supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     Proper Assessment of Opinion Evidence

Plaintiff contends that the ALJ erred in failing to properly assess the opinion evidence of the state agency medical consultants and the treating oncologist. [Entry # 12 at 17–21]. The Commissioner responds that the ALJ reasonably weighed the medical opinion evidence. [Entry #13 at 10–12].

In evaluating opinion evidence, the ALJ must evaluate every medical opinion received. 20 C.F.R. §404.1527(c). Courts evaluate and weigh medical opinions based primarily on the following: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant, including the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist.

20

20 C.F.R. §404.1527(c); *see also Johnson v. Barnhardt*, 434 F.3d 650, 654 (4th Cir. 2005).

If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.  SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence).

Evidence from nonexamining sources is considered to be opinion evidence, which must be considered in accordance with relevant factors, such as the consultant's medical specialty and expertise in Social Security's rules, the supporting evidence in the case record, supporting explanations the consultant provides, and any other factors relevant to the weighing of the opinions.  20 C.F.R. §404.1527(e)(2)(ii); see also *Jonker v. Astrue*, 725 F. Supp. 2d 902 (C.D. Cal. 2010).  Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency physician, as the administrative law judge must do for any opinions.  *Id.*

Plaintiff argues that the ALJ was required to consider the opinions of the state agency consultants in conjunction with the functional assessments provided by the treating oncologist, Dr. Townsend.  [Entry #12 at 20].  Plaintiff does not argue that Dr.

21

Townsend's assessments of performance status are treating physician opinions entitled to controlling weight, but Plaintiff instead argues that they are opinions that should be considered to the extent that they support the opinion of state agency consultant Dr. Meriwether. *Id.* The undersigned therefore declines to assess whether Dr. Townsend's statements are entitled to controlling weight, but concludes that the performance statuses should have been considered according to the rules set forth for considering opinion evidence in 20 C.F.R. §404.1527.

Between August 2011 and October 2012, Dr. Townsend provided performance statuses at ten visits. These performance statuses varied from 0 to 1, "meaning from fully active, able to carry on all predisease activities without restrictions" to "no physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g. office work, light house work)." These performance statuses directly address Plaintiff's activity and functional levels, which were relevant to the ALJ's determination of her ability to engage in work activity during the relevant period. The ALJ failed to address these performance statuses in her decision except to the extent that she mentioned that Plaintiff's "treating doctor determined that she was able to carry on all pre-disease activities without restrictions on July 24, 2012." Tr. at 26.

Plaintiff further argues that the ALJ erred in failing to consider the opinion of state agency consultant Dr. Meriwether where her opinion was rendered based on substantially greater evidence than the opinion of state agency physician Lindsey Crumlin, M.D., whose opinion was assigned great weight. [Entry #12 at 18–19]. Plaintiff argues that the ALJ had an obligation to indicate the weight assigned to Dr. Meriwether's opinion.

22

[Entry #12 at 19]. The Commissioner argues that the Plaintiff is asking the court to re-weigh the opinion evidence. [Entry #13 at 10]. The Commissioner also responds that the ALJ thoroughly reviewed the entire record and found that the evidence was consistent with the opinion rendered by Dr. Crumlin. [Entry #13 at 11]. The Commissioner further argues that—because the ALJ mentioned Dr. Meriwether's opinion in her decision—she did not ignore Dr. Meriwether's opinion. [Entry #13 at 12].

The ALJ's consideration of Dr. Meriwether's opinion was limited to the following:

> On November 29, 2011, another State agency medical consultant found the claimant was able to perform light work except the claimant could occasionally perform all other postural movements.

Tr. at 26.

The undersigned recommends a finding that the mere mention of a medical opinion within an ALJ's decision without any discussion of that opinion fails to comply with the requirements set forth for the consideration of opinion evidence in 20 C.F.R. §404.1527. The ALJ indicated that she was adopting Dr. Crumlin's opinion because it was supported by the medical evidence of record, specifically the reported findings during the consultative examination with Dr. Nicholson. Tr. at 26. The ALJ failed to address either tate agency physician's opinion in accordance with the relevant factors set forth in 20 C.F.R. §404.1527(e)(2)(ii). The ALJ failed to address the medical specialty of either consultant; the expertise of either consultant in Social Security's rules; or the supporting explanations that either consultant provided.

While the record lacks information about the medical specialty and expertise of the two consultants, each state agency physician provided a supporting explanation for her assessment. Dr. Crumlin indicated that the Plaintiff's complaints of pain were out of proportion to the assessed limitations indicated in the examination report of Dr. Nicholson. Tr. at 239. Dr. Crumlin further cited to the objective examination findings of Dr. Nicholson to support her assessment. Tr. at 241. Dr. Meriwether also concluded that Plantiff's complaints of pain were out of proportion in comparison to the evidence in the file. Tr. at 281. However, she indicated that her assessment considered the objective evidence, the functional status indicated by Plaintiff's oncologist, her recent abdominal surgery, and her then-current chemotherapy treatment. *Id.*

The undersigned recommends that where the supporting explanations between the state agency physicians' opinions differ substantially, the ALJ should provide reason for affording greater weight to one opinion than the other. Here, it is indisputable that the Plaintiff was diagnosed with colon cancer, had surgery, and began chemotherapy in the approximately six-month period between the dates of the two state agency physicians' assessments. Tr. at 242–275. She also had imaging studies performed that indicated the presence of osteoarthritis. Tr. at 218, 228, 230 and 251. Dr. Meriwether's assessment of Plaintiff's residual functional capacity mentioned her intervening diagnosis and treatment and the objective evidence in the file, and Dr. Crumlin's did not. The undersigned does not go so far as to suggest that any time there is a difference in records reviewed between state agency physicians that an ALJ must compare and contrast the two opinions in order to meet the requirements of 20 C.F.R. §404.1527(e)(2)(ii). However, in this case,

because Dr. Meriwether provided a basis for the difference between her opinion and that of Dr. Crumlin, the ALJ should have addressed the supporting explanations in both physicians' opinions.

The undersigned recommends a finding that the ALJ failed to comply with the requirements of 20 C.F.R. §404.1527 in giving great weight to Dr. Crumlin's opinion while discounting that of Dr. Meriwether and failing to consider opinion evidence provided by Dr. Townsend. The undersigned declines to address whether the opinion of Dr. Meriwether should have been afforded greater weight than that of Dr. Crumlin based on the fact that Dr. Meriwether had access to more evidence. The undersigned further recommends that this matter be remanded to the ALJ for further consideration of the opinions of Drs. Crumlin, Meriwether, and Townsend in accordance with the factors set forth in 20 C.F.R. §404.1527.

2.    Cancer and Cancer Treatment as Severe Impairments

Plaintiff argues that the ALJ failed to consider Plaintiff's residuals from cancer and treatment of cancer. [Entry #12 at 23]. The Commissioner argues that the ALJ's explicit consideration of post colon surgery and her determination that Plaintiff did not suffer any functional limitations as a result of this condition provided sufficient basis for her to conclude that cancer and treatment of cancer were non-severe impairments. [Entry #13 at 13]. Further, the Commissioner argues that because the ALJ did conclude that Plaintiff had a severe impairment, she considered all impairments as part of her residual functional capacity assessment. [Entry #13 at 14].

25

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" 20 C.F.R. § 404.1508. Determination of severity of claimant's impairment is "[a] de minimis hurdle in [the] disability determination process," meant to expedite just settlement of claims by "screening out totally groundless claims." *Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. 2008).

The ALJ concluded that Plaintiff's post colon surgery, mild venous varicosity, and leg pain were non-severe impairments. Tr. at 23. She also concluded that obesity was a non-severe impairment. Tr. at 24. She did not specifically address residuals from cancer and treatment of cancer, except to mention in her decision that Plaintiff underwent surgery for colon cancer in July 2011 and that her treating doctor determined that she was able to carry on all pre-disease activities without restrictions on July 24, 2012. Tr. at 26. The ALJ's decision provides no other discussion of Plaintiff's colon cancer diagnosis and treatment or her continued complaints of residual effects from treatment.

The burden for establishing the presence of a severe impairment is met in this case in the form of medically-acceptable clinical and laboratory diagnostic techniques, as well

as opinion evidence from Dr. Townsend indicating limitations in Plaintiff's ability to do basic work activities. The medical evidence indicates that Plaintiff was diagnosed with colon cancer on July 12, 2011. Tr. at 242. However, she had reported to the emergency room with symptoms consistent with the diagnosis on May 20, 2011. Tr. at 211. The claimant underwent adjuvant chemotherapy between August 30, 2011, and March 6, 2012. Tr. at 272, 354. Throughout the treatment period, Dr. Townsend indicated Plaintiff's performance statuses, which frequently suggested that her ability to do basic work activities was limited. Laboratory testing suggested abnormalities consistent with complaints of fatigue, including low hemoglobin and low neutrophils. Tr. at 292, 310, 352. The claimant continued complain of fatigue as late as October 16, 2012, when Dr. Townsend reported that Plaintiff had a gradual increase in stamina, but was still fairly tired. Tr. at 379.

The Commissioner contends that any error by the ALJ is harmless because the ALJ considered Plaintiff's severe and non-severe impairments in determining her RFC. [Entry #13 at 14].

The undersigned finds that because the burden for establishing the presence of a severe impairment was met, the ALJ was obligated to assess residuals from cancer and cancer treatment with respect to Plaintiff's residual functional capacity. The undersigned agrees that an ALJ's failure to find a severe impairment at step two may be harmless where she considers that impairment at subsequent steps. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (collecting cases). Here, however, the ALJ did not address Plaintiff's colon cancer and residuals from treatment at subsequent steps.

27

Despite the Commissioner's contention that the ALJ considered all of Plaintiff's impairments when she assessed Plaintiff's RFC between steps three and four, the ALJ included no discussion of Plaintiff's cancer and treatment-related residuals in the remainder of her decision. While she did reference treatment notes from Plaintiff's oncologist, she only addressed the musculoskeletal examination information in those notes. She failed to discuss complaints of decreased stamina and fatigue that were indicated in medical records and in Plaintiff's testimony.

Based on the foregoing, the undersigned is constrained to recommend that the district judge remand this case and direct the ALJ to properly consider the record evidence in determining whether cancer and treatment for cancer are severe. The undersigned further recommends directing the ALJ to employ the special technique required by 20 C.F.R. § 404.1520(c).

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 10, 2014                                   Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).